UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

FEDERATED RETAIL HOLDINGS, INC.,

        Plaintiffs,

  -v-                                                     No.  06 Civ. 6119 (LTS)(THK)

SANIDOWN, INC.,

        Defendant.

--------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        This action, brought by Federated Retail Holdings, Inc. ("FRH"), Macy's Department Stores, Inc. ("Macy's"), Macys.com, Inc. ("Macys.com"), and Macy's Merchandising Group, Inc. ("MMG") (collectively, "Federated" or "Plaintiffs"), against Sanidown Inc. ("Sanidown" or "Defendant"), arises from a contract dispute. Defendant has interposed several counterclaims. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332.

        Plaintiffs now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing Defendant's counterclaims. The Court has reviewed thoroughly and considered carefully all of the parties' submissions and, for the reasons explained below, Plaintiffs' motion for summary judgment is granted in part and denied in part.

### BACKGROUND

        The following facts are undisputed unless otherwise noted. For approximately fifteen years, Defendant has supplied Plaintiffs with certain feather and down products, including pillows, comforters, and featherbeds. (Defendant's Response to Plaintiffs' Local Civil Rule 56.1

Statement ("Def. 56.1 St.") ¶ 1.)[1]  Throughout the parties' business relationship, Sanidown and Federated would customarily agree, in advance, on certain specifications for the products and negotiate a price for each of the products based upon the specifications.  (Id. at ¶ 7; Plaintiffs' Statement Pursuant to Local Civil Rule 56.1 ("Pl. 56.1 St.") ¶ 7.)  The agreement as to the amount of goods, at a particular price, was memorialized in a projection sheet provided by Plaintiffs.  (Affidavit of Jonathon D. Warner ("Warner Aff.") Ex. 18 Deposition of Marissa Nono ("Nono Dep.") 65; Def. 56.1 St. ¶ 7.)[2]  The parties appear to refer to the projection sheets as "purchase orders" at times.  Sanidown also agreed to adhere to Federated's shipping, labeling, and freight procedures, and agreed to incur expense offsets, or "chargebacks," for procedural non-compliance.[3]  (Pl. 56.1 St. ¶ 49; Def. 56.1 St. ¶ 49.)

In November 2005, Plaintiffs agreed to purchase the Tahoe Comforter, Appalachian Comforter, Matterhorn Pillow, Matterhorn Featherbed, Mount Evans Pillow, Euro Square Pillow, and the Hotel Comforter from Defendant's lines for the Spring 2006 and Fall 2006 seasons and provided Defendant with projection sheets for those seasons.  (Def. 56.1 St. ¶¶ 6, 7.)  Defendant prepared to manufacture all of the goods specified on Plaintiffs' projection sheets by purchasing the necessary raw materials.  (Affidavit of Suzanne Woodward, Esq. ("Woodward Aff.") Ex. C

---

[1]  References to the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 incorporate by reference the evidence cited in those statements.

[2]  Plaintiffs' Senior Product Manager, Marissa Nono ("Nono"), testified that the projection sheet is the document which "constitutes the agreement" between Plaintiffs and their vendors.  (Nono Dep. 65.)

[3]  The various justifications for chargebacks are contained in Macy's Vendor Standards Manual, which, both parties agree, governs the parties' dispute over the propriety of Federated's chargebacks against Sanidown's invoices.  (Affidavit of George Frenkel ("GF Aff.") Ex. 14.)

Deposition of George Frenkel ("GF Dep.") 138-40.) Defendant's usual practice was to start ordering all raw materials for delivery upon receipt of Plaintiffs' projection sheets in order to lock in prices and delivery dates. (Id.)

In Spring 2006, after Defendant had shipped Plaintiffs all of the products ordered for Spring 2006, the American Down Association ("ADA") tested one of the Matterhorn Comforters. (GF Dep. 157-59.) The ADA found that the comforter did not contain the type of down identified on the label. (Id.) This finding led to a second, separate test conducted by the California Bureau of Home Furnishings and Thermal Insulation (the "Bureau") on another Matterhorn Comforter. (Id. at 157-61.) The Bureau subsequently issued a "withhold from sale" order on the failed lot of comforters. (GF Aff. ¶¶ 6, 7.) In response, Federated placed a "hold" on Sanidown's account, effectively suspending payment for the Spring 2006 shipment of goods. (Id.) Sanidown agreed to arrange for, and credit, Federated's return of all Matterhorn Comforters, irrespective of their compliance with industry standards. (GF Aff. ¶ 8.) After crediting Federated's account approximately $68,000 for the anticipated Matterhorn returns, Sanidown calculated that it was owed approximately $106,000 under the Spring 2006 agreement. (Id.)

In May 2006, Plaintiffs requested that Defendant commence shipment of the Fall 2006 goods. (GF Dep. 188-89.) Sanidown, however, refused to ship any additional merchandise unless and until Federated assured Sanidown that it would remit payment due and owing for the Spring 2006 shipment. (Id.) Nono contacted Plaintiffs' legal department to determine whether it was necessary to maintain the hold on Sanidown's account. (Nono Dep. 103.) The legal department then forwarded an email to Nono that stated: "[Sanidown] no longer needs to be on full account hold. Please maintain the hold for $110,000; any amount over that can be released." (Pl.

56.1 St. ¶ 14; GF Aff. Ex. 6.)[4] Nono forwarded this email to Sanidown on May 23, 2006. (Nono Dep. 138.) Nono then visited Sanidown's headquarters to urge Sanidown's principals to commence shipment of the Fall 2006 goods. (Def. 56.1 St. ¶ 15; Nono Dep. 144-45.) On May 24, 2006, Sanidown commenced the first shipment of goods under the Fall 2006 agreement. (Nono Dep. 183.) On June 14, 2006, Federated informed Sanidown that Sanidown's entire account was still on hold. (Id.) Between May 24 and June 14, Sanidown had shipped approximately $850,000 worth of goods in reliance on Federated's representations that, aside from the $110,000 withheld by Federated to cover the return of the Matterhorn Comforters, the hold had been lifted. (GF Aff. ¶ 10.) Federated failed to make any payments for the Fall 2006 goods. According to Federated, Federated rejected the shipped Fall 2006 goods and terminated all orders for additional Fall 2006 goods as a result of Sanidown's delivery of some non-conforming goods for the Spring 2006 season. (Nono Dep. 91-114.)

## DISCUSSION

The standard governing motions for summary judgment is well-settled. Summary judgment should be rendered when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is therefore entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For the purposes of summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir. 2008). The moving party bears the burden of establishing the absence of any genuine issue of material fact. Anderson v. Liberty Lobby, Inc.,

---

[4] Federated placed Sanidown's account on hold for $110,000 in order to cover Federated's return of the Matterhorn Comforters. (Pl. 56.1 St. ¶ 11.)

477 U.S. 242, 256 (1986).  However, the non-moving party cannot avoid summary judgment through vague assertions regarding the existence of disputed material facts, or "defeat the motion through mere speculation or conjecture."  W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

Sanidown's Counterclaims

*General Damages*

Defendant Sanidown claims that Federated breached their agreement by: failing to pay for goods ordered and delivered under the Spring 2006 and Fall 2006 agreements; improperly deducting "chargeback" costs from Federated's balance due; and subsequently terminating the agreement for Fall 2006 goods.  Defendant's damages claims arising from the alleged breach include: the contract price of the goods actually shipped to Federated for which Federated failed to pay ("unpaid invoice damages");[5] the profits which Sanidown lost as a result of Federated's repudiation of its agreement to purchase an additional $6.5 million worth of goods for the Fall 2006 season, as evidenced by Federated's projection sheet ("lost profit damages");[6] the cost of the component parts purchased by Sanidown in reliance on Federated's agreement to purchase the

---

[5] Sanidown has produced invoices showing the amount shipped for the Spring and Fall 2006 seasons.  (GF Aff. Ex. 1.)  The invoice summary for the goods shipped for the Fall 2006 seasons shows $839,356.23 due and owing.  (GF Aff. Ex. 8.)

[6] Sanidown's president proffers in an affidavit that Sanidown has consistently maintained a thirty percent profit margin with respect to the manufacture and sale of feather and down products.  (GF Aff. ¶ 20.)  Although the entire Fall 2006 agreement was worth $7.4 million, Federated returned the Fall 2006 shipment of goods, which were worth approximately $850,000.  (Id.)  Sanidown's claim for lost profits is based on the $6.5 million in goods that would have been shipped but for Federated's repudiation of the agreement.  (Id.)  Therefore, Sanidown's claim for lost profits is approximately $1.95 million.  (Id.)

additional $6.5 million worth of goods for the Fall 2006 season ("raw materials damages");[7] chargeback damages incurred as a result of Federated's improper and undocumented deductions from payments from 2000 to 2006 ("chargeback damages");[8] storage costs; and freight costs.

Under New York law,[9] the elements of a breach of contract claim are: the existence of a contract; performance by the party seeking recovery under the contract; non-performance by the other party; and damages directly and proximately attributable to the breach. Clearmont Property, LLC v. Eisner, 58 A.D.3d 1052, 1055 (3d Dep't 2009).

Here, Federated contends principally that it is entitled to judgment dismissing Sanidown's breach of contract counterclaim because Sanidown has failed to come forward with evidence to substantiate its damages claims. Specifically, Federated asserts that Sanidown's inconsistent damage estimates at deposition warrant summary judgment in Federated's favor.

In order to prevail on a breach of contract action, a claimant that has met its burden with respect to the other elements need only must prove damages with reasonable certainty. See W.L. Hailey & Co. v. County of Niagara, 388 F.2d 746, 753 (2d Cir. 1967). Sanidown need only

---

[7] Although Sanidown has provided an estimate based on invoices from Sanidown's raw material suppliers in support of its raw materials damages, (GF Aff. Ex. 2), Sanidown submits that "[the estimate] was calculated improperly, as it was calculated by a lay-person who included raw materials which were not specifically purchased in reliance on the agreement in question." (Def. 56.1 St. ¶ 39.) However, Sanidown's principals have testified at deposition that they have "produced invoices [from their suppliers] and will proffer competent testimony at trial from officers and/or employees with personal knowledge of the facts to explain the invoices and to describe what transpired with all raw materials." (Id.)

[8] Sanidown's factor, Sterling Factor Corp., compiled and documented the total chargebacks taken by Federated from 2000 to 2006. The compilation was produced in discovery as the "Chargeback Inquiry Report." (GF Aff. Ex. 14.)

[9] Since both parties rely on New York law to support their positions, the Court assumes New York law governs the dispute.

point to evidence in the record from which a reasonable inference could be drawn in its favor in order to defeat summary judgment on its damages claim.  See Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996) (ruling that "[i]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper").  Sanidown has proffered both documentation and estimates of the damages that it claims it sustained, as well as testimony as to the facts and methodology underlying its estimates.  Federated's issues with respect to inconsistencies in Sanidown's evidence go to the weight, not the admissibility of evidence and, because Sanidown has proffered information from which a reasonable fact finder could make a damages determination with reasonable certainty, Federated's argument that Sanidown's breach of contract claim must fail for lack of certainty as to damages is unavailing.

Federated has, however, proffered evidence sufficient to demonstrate its entitlement to summary judgment on one aspect of Sanidown's breach of contract claim.  In its opposition papers to Federated's motion, Sanidown asserts that it is entitled to recover freight costs for retrieval of goods withheld by Macy's in the early spring of 2007.  Federated has, however, identified a so-ordered stipulation in the record of this action (docket entry no. 21) in which Sanidown specifically undertook to "provide transportation and arrange for logistics for the removal and return" of the goods, and proffered the transcript of deposition testimony of Perry Sella, Sanidown's Vice President of Operations, in which Sella admits that Sanidown was responsible for the payment of the freight costs incurred pursuant to the stipulation.  (Affidavit of Sal Meli ("Meli Aff.") Ex. A Deposition of Perry Sella ("Sella Dep.") 28-29, 31.)  Accordingly, Federated's motion will be granted to the extent that Sanidown seeks to recover freight costs incurred in the retrieval of goods from Macy's in the early spring of 2007, and its motion is denied

in all other respects as to Sanidown's breach of contract claim.

*Improper Chargebacks*

Sanidown claims that, over a six-year time span, Federated improperly deducted approximately $2.2 million from the amounts due to Sanidown. Federated moves for summary judgment on Sanidown's claim for chargeback damages, asserting that Sanidown has failed to meet its burden of proving the impropriety of the charges. In support of its claim, Sanidown has proffered a Chargeback Inquiry Report prepared by Sterling Factor Corp., Sanidown's factor, which purports to document all of Federated's chargebacks against Sanidown's invoices, totaling approximately $2.2 million, from 2000 to 2006. (GF Aff. Ex. 14.) Federated, arguing that Sanidown has the burden of proving the impropriety of each chargeback, contends that it is entitled to summary judgment because the report is insufficiently specific as to the grounds for the chargebacks and the invoices to which they relate. Sanidown's evidence that it made timely deliveries and shipped conforming goods to Macy's is, however, sufficient to frame a genuine issue of material fact as to whether Macy's, which determined and imposed the specific chargebacks pursuant to Macy's Vendor Standards Manual on the basis of alleged irregularities with respect to goods or deliveries, did so legitimately. It is Federated's burden to demonstrate its entitlement to the chargebacks. See N.Y.U.C.C. §2-607(4). Federated's motion for summary judgment is denied insofar as it is premised on failure of proof as to the chargeback claim.

Federated also moves for summary judgment on Sanidown's claim for chargeback damages insofar as they are alleged under an unjust enrichment theory. Federated's principal argument, in requesting the Court to grant the motion, is that the claim is precluded by the existence of a valid contract which governs the subject matter of the dispute.

A cause of action for unjust enrichment, a quasi contract claim, requires a showing

that the defendant was enriched at the expense of the plaintiff, and that it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff.  Clifford Gray, Inc. v. LeChase Constr. Servs., LLC, 31 A.D.3d 983, 987-88 (3d Dep't 2006).

The parties agree that the Macy's Vendor Standards Manual and the purchase orders govern the improper chargebacks allegation.  The New York Court of Appeals has held that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987).  The purchase orders and Macy's Vendor Standards Manual thus preclude Sanidown's claim for recovery under an unjust enrichment theory.  Federated's motion for summary judgment on the chargeback damages claim is granted insofar as the claim is brought under an unjust enrichment theory.  However, Sanidown's claim for chargeback damages survives insofar as it is asserted as a breach of contract claim.

*Fraud*

Defendant Sanidown claims that Federated fraudulently induced it to commence shipment of the Fall 2006 goods by misrepresenting the status of its account.  Plaintiffs aver that Defendant's fraud claim should be dismissed as duplicative of the breach of contract claims.  Defendant disagrees, claiming that Plaintiffs' purported fraud was extraneous to the contract, thus providing a separate cause of action for fraud.

Under New York law, in order to maintain a separate action for fraudulent inducement, the claimant must allege fraud that is extraneous to the contract, occurring before the contract came into existence, and that leads the defrauded party to enter into the contract, rather than merely fraudulent non-performance of the contract.  See Triangle Underwriters, Inc. v.

Honeywell, Inc., 604 F.2d 737, 747 (2d Cir. 1979).

In the instant action, Sanidown claims that it was fraudulently induced by Federated into shipping approximately $840,000 worth of goods to Federated pursuant to the Fall 2006 agreement without any intent, on Federated's part, to tender payment.  Further, Sanidown claims that it would not have shipped the goods but for Federated's misrepresentation that Sanidown's account had been taken off hold.  However, by the parties' own admissions, the underlying contract was memorialized by Sanidown's receipt of Federated's projection sheets.  Therefore, the alleged fraudulent inducement occurred after the formation of the contract, inducing performance under the contract rather than inducing Sanidown to enter the contract.  See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996) (holding that intentionally false statements by Defendant indicating his intent to perform under the contract are insufficient to support a claim of fraud under New York law).  Hence, Sanidown's fraud claim is duplicative of the breach of contract action.  Accordingly, Plaintiffs' motion for summary judgment on the fraud claim is granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted with respect to Defendant's First Counterclaim (Breach of Contract) insofar as that counterclaim seeks damages for freight costs incurred in early 2007 in connection with the retrieval of goods, is granted with respect to Defendant's Second Counterclaim (Fraud), is granted with respect to Defendant's Third Counterclaim (Unjust Enrichment), and is denied in all other respects.

This Memorandum Opinion and Order resolves docket entry 53.

The final pretrial conference in this action is scheduled for October 9, 2009 at 3:00 p.m. in Courtroom 11C.  The parties shall meet promptly with Magistrate Judge Katz for settlement

purposes, and shall consult with each other and make submissions in advance of the final pretrial conference as in accordance with the provisions of the December 4, 2006, scheduling order (docket entry no. 19).

SO ORDERED.

Dated: New York, New York
August 5, 2009

LAURA TAYLOR SWAIN
United States District Judge